UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOTHA WILLIAMSON,<br><br>            Plaintiff,<br><br>    v.<br><br>DHL GLOBAL FORWARDING USA; DANZAS CORPORATION; DHL EXPRESS (USA), INC.; RAQUEL MEDINA; MONICA SUAREZ; and DOES 1 through 25, Inclusive,<br><br>            Defendant. | Case No. 2:24-cv-01476-WLH-BFM<br><br>**ORDER RE PLAINTIFF LEOTHA WILLIAMSON'S MOTION TO REMAND AND REQUEST FOR FEES [18]** |

Before the Court is Plaintiff Leotha Williamson's ("Williamson") Motion to Remand to Los Angeles Superior Court and Request for Fees. (Mot., Docket No. 18). For the following reasons, the Court **GRANTS** the Motion but **DENIES** the request for fees.

## I. BACKGROUND

### A. Factual Background

This case arises out of Williamson's employment with Defendants DHL Global Forwarding USA; Danzas Corporation ("Danzas"); and DHL Express (USA), Inc. (collectively, the "Employer Defendants"). (Decl. of Lisa L. Peterson in Supp. of Removal, Exh. 1, Docket No. 6-1 ("Compl.") ¶ 1). Williamson worked for the Employer Defendants for fifteen years, from 2007 until her termination in 2022. (*Id.* ¶¶ 17, 26). At all times relevant to this action, Williamson worked as an Ocean Import Agent at one of Employer Defendants' locations in Los Angeles County. (*Id.*). During her tenure, Williamson reported to Defendants Raquel Medina and Monica Suarez (collectively, the "Supervisor Defendants"), both of whom were Williamson's supervisors. (*Id.* ¶¶ 6–7).

In 2016, Williamson began suffering from workplace injuries that included carpal tunnel, severe tendonitis, a tear in her right shoulder rotator cuff, and neck and back pain. (*Id.* ¶ 18). Williamson took medical leave to receive surgery for her injuries. (*Id.*). She returned to work in late 2016. (*Id.*). In the following years, Williamson's pain began to intensify until, in March 2020, she required another surgery. (*Id.* ¶ 19). Though she continued to have pain, Williamson returned to work in December 2020. (*Id.*). By then, Williamson also suffered from depression and anxiety. (*Id.*). Williamson alleges that she informed the Supervisor Defendants of her disabilities but that they "ignored, brushed aside, taunted, and jeered at" Williamson "for needing accommodations." (*Id.*). Williamson states that during the rest of her tenure, the Supervisor Defendants "continued to harass [her] for taking medical leaves," "forc[ed] her to work longer hours than she was physically able," "retaliated against" her, "accused [Williamson] of 'faking' her injuries and 'acting' like she [could not] work," and "reported [her] to HR." (*Id.* ¶¶ 19–20).

In July of 2021, Williamson's doctor again placed her on medical leave. (*Id.* ¶ 22). Williamson asserts that the Supervisor Defendants "regularly pressured [her] to return from leave … in order to make her quit." (*Id.* ¶ 23). On January 13, 2022, the vice president of Human Resources contacted Williamson and informed her that "if she did not return to work by February 8, 2022, she would be terminated." (*Id.* ¶ 25). Even though Williamson required an additional month of leave, she returned to work on February 8, 2022. (*Id.* ¶ 26). Williamson alleges that upon her return, "she advised Defendants that her doctor had not yet released her to work," but that "she was immediately terminated with the reason that Defendants were 'unable to approve any additional extension to [her] leave of absence at this time.'" (*Id.*).

### B.   Procedural Background

After exhausting her administrative remedies, Williamson filed this action in Los Angeles Superior Court on December 15, 2023. (*Id.* ¶ 29). She brings seven causes of action against the Employer Defendants alone and two causes of action—for harassment based on age and disability in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(j), and for intentional infliction of emotional distress—against all Defendants, including the Supervisor Defendants. (*See generally id.*).

On February 22, 2024, Defendant Danzas removed this case to federal court. (Notice of Removal, Docket No. 1). Williamson and the Supervisor Defendants are domiciled in California, while the Employer Defendants are incorporated in Ohio and have headquarters and a principal place of business in Florida. (*Id.* ¶¶ 17–18; Compl. ¶¶ 1–7). Danzas argues that this Court has diversity jurisdiction because (1) the amount in controversy is over $75,000 and (2) Williamson fraudulently joined the Supervisor Defendants to destroy diversity, so their citizenship should be disregarded. (Opp'n, Docket No. 21).

## II. DISCUSSION

### A. **Fraudulent Joinder Standard**

Under 28 U.S.C.A. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." When a case is grounded in state law, as this one is, subject matter jurisdiction rests on diversity of citizenship between every plaintiff and every defendant. 28 U.S.C.A. § 1332. If a court finds that the plaintiff "fraudulently joined" a defendant for the sole purpose of destroying diversity, however, the court must disregard that defendant's citizenship. *See, e.g.*, *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). In assessing whether a non-diverse defendant has been fraudulently joined, courts attempt to determine whether the plaintiff truly seeks to recover against that defendant. *See, e.g.*, *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id.*

Establishing fraudulent joinder is a "heavy burden." *Plute*, 141 F. Supp. 2d at 1008. In the fraudulent joinder analysis, a court must construe "[a]ll doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading … in favor of remand." *Archuleta v. Am. Airlines, Inc.*, No. CV 00-1286 MMM (SHX), 2000 WL 656808, at *4 (C.D. Cal. May 12, 2000). Notably, "if there is even a possibility that plaintiff may prevail, remand is warranted." *Id.*

Typically, a defendant seeking to establish fraudulent joinder does so in one of two ways. *See Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). First, a defendant may show that the statute of limitations bars plaintiff from bringing a claim. *Id.* Second, a defendant may "present[] extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant." *Id.*

Here, Danzas takes the second route and argues that it is impossible for Williamson to prevail on her two claims against the Supervisor Defendants. (Opp'n at 2–10). As to Williamson's FEHA claim for disability-based harassment, for example, Danzas asserts that Williamson's allegations against the Supervisor Defendants "are hardly sufficient to constitute harassment, as they fail to show that [the Supervisor Defendants] permeated [Williamson's] workplace with disability … based 'intimidation, ridicule, and insult.'" (Opp'n at 5 (quoting *Haley v. Cohen & Steers Capital Management, Inc.*, 871 F.Supp.2d 944, 958 (N.D. Cal. 2012)). For support, Danzas cites cases in which courts found that harassing conduct did not rise to the level of a FEHA violation, where the conduct was arguably more offensive and pervasive than what Williamson has alleged here. (*See id.* at 3–4 (citing *Haley*, 871 F.Supp.2d at 958; *Carrico v. CAN Ins.*, No. 2:19-cv-01445 JAK-JPRx, 2020 WL 5797698 (C.D. Cal., June 1, 2020); *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 798 (9th Cir. 2003); *Nielsen v. Trofholz Technologies, Inc.*, 750 F.Supp.2d 1157, 1169 (E.D. Cal. 2010)).

The Court disagrees with Danzas. First, the bulk of the cases Danzas cites were decided before the California Legislature enacted California Government Code section 12923 in 2019. That statute clarified that "[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment …." Cal. Gov't Code § 12923(b). It thus set a "new standard" for FEHA harassment that is in some ways less stringent than the one courts applied before. *Beltran v. Hard Rock Hotel Licensing, Inc.*, 97 Cal. App. 5th 865, 880 (2023) (holding that pre-2019 cases requiring "a concerted pattern of harassment" to be shown "are no longer good law when it comes to determining what conduct creates a hostile work environment"). The pre-2019 cases Danzas cites apply the wrong standard for harassment under FEHA and are therefore inapposite.

Second, as Williamson points out, all of the cases Danzas cites were decided after the parties had the chance to develop a complete evidentiary record. (Reply, Docket

5

No. 22 at 3–4); *Haley*, 871 F.Supp.2d at 958 (granting summary judgment on plaintiff's FEHA harassment claim); *Carrico*, 2020 WL 5797698, at *12 (emphasis added) (dismissing claims against supervisor as fraudulently joined simultaneously with deciding motion for summary judgment because "[n]either the allegations *nor the evidence* shows a non-fanciful possibility that [p]laintiff could prove he was harassed by" his supervisor); *Manatt*, 339 F.3d at 804 (affirming district court's grant of summary judgment); *Nielsen*, 750 F.Supp.2d at 1167 (granting summary judgment for defendant on claim of disability-based harassment). As Danzas surely knows, a party moving for summary judgment has the burden of showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But when a non-moving party argues that a defendant has been fraudulently joined, a plaintiff moving for remand need only show a "'glimmer of hope' that plaintiff can establish [a] claim." *Gonzalez v. J.S. Paluch Co.*, No. 12-cv-08696-DDP-FMOx, 2013 WL 100210, at *4 (C.D. Cal. Jan. 7, 2013) (alteration in original) (quoting *Mirchandani v. BMO Harris Bank NA*, No. 11-cv-2286-PHX-GMS, 2011 WL 6019311, at *3 (D. Ariz. Dec. 5, 2011)). That is, even if a plaintiff fails to state a claim, the district court need only consider "whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend" such that relief is possible. *Grancare*, 889 F.3d at 550.

      Williamson has made such a showing here. California's Legislature has declared that

> harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being …. [I]n a workplace harassment suit, "the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. It suffices to prove that a reasonable

person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to make it more difficult to do the job."

Cal. Gov't Code § 12923(a) (quoting with approval *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).

The Court cannot say definitively that the alleged conduct by the Supervisor Defendants would not, as a matter of law, "so alter[] working conditions" such that a reasonable person would find it "more difficult to do the job." *Id.* It certainly cannot say that there is no hope for Williamson to prevail on her claim should she amend the Complaint, as is the standard at this stage.

Because it is possible for Williamson to prevail on her claim for disability-based harassment against the Supervisor Defendants, the Court need not evaluate the possibility of Williamson prevailing on her other claims. Williamson's Motion to Remand is **GRANTED**.

### B. Fee Request

Williamson also requests that the Court order Defendants to pay attorney's fees in connection with the Motion to Remand. A court may grant attorney's fees upon remanding a removed case to state court, 28 U.S.C.A. § 1447(c), but "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Finding that Danzas did not lack an objectively reasonable basis for removal, the Court **DENIES** Williamson's request for attorney's fees.

//

//

//

//

//

### III. CONCLUSION

Because this Court lacks subject matter jurisdiction over this case, the Court **GRANTS** Williamson's Motion to Remand; however, it **DENIES** Williamson's request for attorney's fees. The case is remanded to the Los Angeles Superior Court.

**IT IS SO ORDERED.**

Dated: April 24, 2024

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE